UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ALEX REYES and CARLOS LASTRA, on behalf of themselves and others similarly situated,

                Plaintiffs,

       -against-

CRYSTAL WINDOW & DOOR SYSTEM, LTD.,

                Defendant.
-------------------------------------------------------x

**MEMORANDUM AND ORDER**
23-CV-2578 (RPK) (JRC)

RACHEL P. KOVNER, United States District Judge:

In this Fair Labor Standards Act and New York Labor Law litigation, defendant Crystal Window & Door System, Ltd. moves under Federal Rule of Civil Procedure 12(b)(1) to dismiss two of plaintiffs' claims for lack of subject-matter jurisdiction. *See* Def.'s Mot. to Dismiss (Dkt. #13-1). Defendant's motion is denied. The Court has supplemental jurisdiction over plaintiffs' state-law pay-frequency claim because it arises out of the same nucleus of operative facts as their federal overtime claim and because no discretionary reasons to decline jurisdiction exist. And plaintiffs have Article III standing to pursue their wage-statement and wage-notice claims because they have sufficiently alleged that defendant's noncompliance with the statutory notice requirements caused them concrete harms.

## BACKGROUND

### I. Factual Background

The following facts are taken from plaintiffs' Amended Complaint and are assumed to be true for the purposes of this order.

1

Defendant Crystal Window & Door System, Ltd. is a manufacturer of residential and commercial windows with a plant in Queens, New York. Am. Compl. ¶¶ 11–13 (Dkt. #10). Defendant employs more than 800 people at its main factory, regional branches, subsidiaries, and affiliate firms. *Id.* ¶ 16. Plaintiffs Alex Reyes and Carlos Lastra were employed by defendant in New York as "front of warehouse helpers," whose tasks included "packing orders," "picking up and loading packages to trucks," "complet[ing] deliveries to customers," "unpacking deliveries," and "general customer service." *Id.* ¶ 47. Plaintiffs were compensated as hourly employees. *Id.* ¶ 35.

Defendant paid plaintiffs on a biweekly basis. *Id.* ¶¶ 39, 44, 48. Plaintiffs were paid at their base hourly rate for the first forty hours worked each week and at time-and-a-half the base rate for any overtime hours. *Id.* ¶ 35. They also received incentive pay, which was based on a flat rate for each window shipped out of defendant's warehouse that was divided among defendant's hourly employees. *Ibid.* This incentive pay was not included in plaintiffs' regular rate as required by the Fair Labor Standards Act ("FLSA"). *Id.* ¶¶ 37–46. This meant that their overtime rate, set at one-and-a-half times their regular rate, was miscalculated. *Ibid.* This resulted in plaintiffs being underpaid for their overtime hours worked. *Ibid.*

Defendant is required by the New York Labor Law ("NYLL") §§ 191(1) and 195(3) to provide plaintiffs accurate wage notices and wage statements listing, among other things, their proper pay frequency and regular and overtime rates of pay. Plaintiffs did not receive accurate notices and statements. Am. Compl. ¶¶ 100, 102. Plaintiffs allege that this failure "resulted in Plaintiffs working for years without knowledge of their correct pay frequency and overtime rate" and that, had they received the proper notices, plaintiffs "would have either quit or made a complaint or otherwise acted to rectify the situation." *Id.* ¶ 106.

2

## II. Procedural History

On April 4, 2023, plaintiffs commenced this action against defendant, bringing four claims. *See* Compl. (Dkt. #1). Counts I and II alleged that defendant underpaid plaintiffs for their overtime hours under the FLSA and the NYLL, respectively. *Id.* ¶¶ 52–74. Count III alleged that defendant failed to provide plaintiffs with accurate wage notices and periodic wage statements, in violation of the NYLL. *Id.* ¶¶ 75–81. And Count IV alleged that, as manual workers, plaintiffs were entitled to be paid weekly under NYLL § 191(1), but that defendant paid them biweekly. *Id.* ¶¶ 82–89. Plaintiffs brought the suit as both a FLSA collective action and a Federal Rule of Civil Procedure 23 class action for their NYLL claims, *id.* ¶¶ 33–51, and sought, *inter alia*, unpaid overtime compensation, liquidated damages, prejudgment and post-judgment interest, and attorney's fees and costs, *id.* ¶¶ 1–2. They later amended their complaint, adding more factual allegations but raising the same four claims. *See generally* Am. Compl.

Defendant now moves to dismiss certain NYLL claims under Federal Rule of Civil Procedure 12(b)(1). It argues that the Court should not exercise supplemental jurisdiction over plaintiffs' NYLL pay-frequency claims, because they are not sufficiently related to plaintiffs' federal claims. In addition, defendant argues that plaintiffs' claims regarding wage notices and wage statements should be dismissed for lack of standing.

## STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When reviewing a Rule 12(b)(1) motion, a court "must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "A plaintiff asserting subject matter

3

jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113.

## DISCUSSION

Defendant's partial motion to dismiss is denied. The Court has supplemental jurisdiction over plaintiffs' pay-frequency claims, and plaintiffs have adequately pleaded standing over wage-notice and wage-statement claims.

### I. Plaintiffs' Pay-Frequency Claim

The Court has supplemental jurisdiction over Count IV of plaintiffs' amended complaint, which alleges violations of the NYLL's pay-frequency provisions.

Under 28 U.S.C. § 1367(a), district courts have supplemental jurisdiction over "all other claims that are so related to claims in the action" over which they have original jurisdiction such that "they form part of the same case or controversy under Article III of the United States Constitution." "For purposes of section 1367(a), claims 'form part of the same case or controversy' if they 'derive from a common nucleus of operative fact.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)). Put differently, the question at hand is whether the relationship between the federal and state claims is "such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). To make this determination, courts "have traditionally asked whether the facts underlying the federal and state claims substantially overlapped or the federal claim necessarily brought the facts underlying the state claim before the court." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (ellipsis, brackets, quotation marks,

and citation omitted). Supplemental jurisdiction is lacking "when the federal and state claims rest[] on essentially unrelated facts." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000).

Because plaintiffs' pay-frequency claim turns on their compensation structure, that claim arises out of the same nucleus of operative fact as their FLSA overtime claim. Both claims will require similar evidence: paystubs, employment contracts, time sheets, personnel files, and so forth. "The fact that Plaintiff's FLSA and [NYLL] claims will involve similar witnesses and evidence provides a strong rationale for exercising supplemental jurisdiction over Plaintiff's state common law claims." *Chaluisan v. Simsmetal E. LLC*, 698 F. Supp. 2d 397, 403 (S.D.N.Y. 2010) (collecting FLSA cases). Put simply, this is a case about defendant's alleged company-wide pay practices. The two claims, involving different but overlapping aspects of those pay practices, are connected by more than the mere fact of the employment relationship—unlike the cases, cited by defendant, involving state-law discrimination and retaliation claims tacked on to federal FLSA hours claims. *See Guerra v. Trece Corp.*, No. 18-CV-625, 2020 WL 7028955, at *6–8 (S.D.N.Y. Nov. 30, 2020); *Dervisevic v. Wolfgang's Steakhouse, Inc.*, No. 19-CV-814, 2019 WL 6251197, at *2–4 (S.D.N.Y. Nov. 22, 2019); *Jenkins v. Yellowstone Props., Inc.*, No. 17-CV-7764, 2019 WL 4392955, at *1–3 (S.D.N.Y. Sep. 12, 2019).

A district court has discretion to decline supplemental jurisdiction over even those claims that arise out of the same nucleus of operative facts as the claims over which the court has original jurisdiction if the court determines that one of several statutorily enumerated circumstances is present. *See* 28 U.S.C. § 1367(c); *Shahriar*, 659 F.3d at 245. Defendant invokes one of these circumstances: that the supplemental-jurisdiction "claim substantially predominates over the claim or claims over which the court has original jurisdiction." 28 U.S.C. § 1367(c)(2). "To the extent

that the state law claims are more complex or require more judicial resources to adjudicate, or are more salient in the case as a whole than the federal law claims, it can be fairly said that the state law claims predominate." *UBS Sec. LLC v. Dondero*, 705 F. Supp. 3d 156, 168 (S.D.N.Y. 2023) (quotation marks, brackets, and citation omitted); *see Fixed Incomes Shares: Series M v. Citibank N.A.*, 130 F. Supp. 3d 842, 852 (S.D.N.Y. 2015) ("[S]tate-law claims may predominate over federal claims in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." (quotation marks and citation omitted)).

But it does not appear at this stage that plaintiffs' NYLL pay-frequency claim will "substantially predominate[]" over their FLSA overtime claim. 28 U.S.C. § 1367(c)(2). Defendant's argument that the NYLL pay-frequency claim will predominate because the plaintiffs' FLSA claim is subject to a statute of limitations of, at most, three years, while their NYLL claims have a statute of limitations of six years, *see* Def.'s Mot. to Dismiss 9, is without merit. Defendant argues that the longer limitations period applicable to NYLL claims means that the NYLL class "will encompass workers who would not otherwise fall into the Proposed FLSA Collective." *Ibid.* But the Second Circuit has explained that "the fact that there are more class members in the state law class action than those in the FLSA collective action should not lead a court to the conclusion that a state claim 'substantially predominates' over the FLSA action." *Shahriar*, 659 F.3d at 246 (quotation marks and citation omitted). Instead, "[p]redomination under section 1367 generally goes to the type of claim, not the number of parties involved." *Ibid.* (citation omitted).

Further, adjudication of plaintiffs' pay-frequency claim will not be substantially more complex than adjudication of plaintiffs' overtime claim. Section 191(a) of the NYLL provides that a "manual worker" must be paid weekly, and section 190(4) defines a "manual worker" as "a mechanic, workingman or laborer." State agency guidance explains that a "manual worker" is one

6

who "spend[s] more than 25 percent of their working time performing physical labor." *Beh v. Cmty. Care Companions Inc.*, No. 19-CV-1417, 2021 WL 3914297, at *3 (W.D.N.Y. Feb. 1, 2021) (quoting N.Y. Dep't of Labor, Opinion Letter, No. RO-09-0066 (May 21, 2009)), *report and recommendation adopted*, 2021 WL 3914320 (W.D.N.Y. June 23, 2021). Plaintiffs both allege that they were employed as "front of warehouse helpers" and performed physical tasks including "packing orders," "picking up and loading packages to trucks," "complet[ing] deliveries to customers," "unpacking deliveries," and "general customer service." Am. Compl. ¶ 47. And plaintiffs have represented that the "[p]utative class" of workers they seek to certify in their FLSA and NYLL actions "all do the same universe of tasks." Pls.' Opp. to Mot. to Dismiss 3 (Dkt. #13-3). Inquiry into whether a person performing these duties qualifies as a "manual worker" under NYLL § 190(4) will be fairly straightforward, and will not require the kind of extensive, employee-by-employee discovery that defendant fears. And if individual, employee-by-employee adjudication does end up being necessary, defendant can always oppose class certification on that basis down the line.

Defendant's motion to dismiss Count IV of plaintiffs' amended complaint is denied.

## II. Plaintiffs' Wage-Notice and Wage-Statement Claims

Defendant's motion to dismiss plaintiffs' NYLL wage-notice and wage-statement claims for lack of standing is denied. The federal judicial power is limited to the adjudication of "Cases" and "Controversies." U.S. Const. art. III, § 2. "'Under Article III, a case or controversy can exist only if a plaintiff has standing to sue,' meaning a personal stake in the outcome of the litigation." *Soule v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, 45 (2d Cir. 2023) (en banc) (quoting *United States v. Texas*, 599 U.S. 670, 675 (2023)). Standing does not exist in every case in which "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."

7

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).  Instead, to establish standing, "a plaintiff must show (i) that he has suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  A "concrete" harm is one that "has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms."  *Id.* at 417 (quoting *Spokeo*, 578 U.S. at 340–41).  Applying these standards to NYLL wage-notice and wage-statement claims, the Second Circuit has explained that "a plaintiff cannot rely on technical violations of the Labor Law" to establish standing.  *Guthrie v. Rainbow Fencing Inc.*, No. 23-350, 2024 WL 3997427, at *3 (2d Cir. Aug. 30, 2024) (quotation marks and citation omitted).  A plaintiff may establish standing, however, by establishing "some causal connection between the lack of accurate notices and [a] downstream harm."  *Id.* at *5.

Plaintiffs have adequately pleaded concrete injuries from defendant's alleged wage-notice and wage-statement violations.  They allege that defendant's failure to provide the notices "resulted in Plaintiffs working for years without knowledge of their correct pay frequency and overtime rate."  Am. Compl. § 106.  In other words, plaintiff alleges that because they "did not receive required information in the form of a notice containing [their] correct overtime rate . . . Defendant[] [was] able to pay [them] without proper overtime premium."  Pls.' Opp. to Mot. to Dismiss 5.  These allegations go beyond mere formulaic recitations of harm.  In fact, they neatly mirror an example provided by the Second Circuit explaining that a plaintiff would have standing to press wage-notice and wage-statement claims if "the plaintiff-employee can show that he or she would have undertaken . . . advocacy and plausibly would have avoided some actual

8

harm or obtained some actual benefit if accurate notices had been provided." *Guthrie*, 2024 WL 3997427, at *5.

Plaintiffs' amended complaint matches this theory beat-for-beat. They allege that (1) their notices listed an inaccurate overtime rate and pay frequency; (2) as a result, they were kept in the dark about how much and how often they should be paid; (3) they suffered harms in the form of under- and late payments; and (4) had they received the proper disclosures, they would have advocated for themselves and "acted to rectify the situation" sooner. Am. Compl. ¶ 106; *see* Pls.' Opp. to Mot. to Dismiss 6. At least at the pleading stage, plaintiffs' complaint crosses the boundary from speculating about harms that "an employee *might* experience" to plausibly alleging harms that the plaintiffs "*did*, in fact, experience." *Guthrie*, 2024 WL 3997427, at *7 (citation omitted); *see Santamaria v. Vee Techs., Inc.*, No. 22-CV-4472, 2024 WL 1216579, at *8 (S.D.N.Y. Mar. 21, 2024) ("Santamaria claims that she suffered an injury because she was misclassified and therefore underpaid. So, according to Santamaria, the informational harm—the fact that she wasn't advised that she was due overtime if she worked overtime hours—led to a concrete injury here. That is, Santamaria didn't know she was supposed to be paid overtime, and so she lost out on the ability to advocate for it and be paid according to the law's requirements."). Defendant's motion to dismiss Count III of plaintiffs' amended complaint is denied.

## CONCLUSION

For the foregoing reasons, defendant's partial motion to dismiss for lack of subject-matter jurisdiction is denied.

SO ORDERED.

                                               /s/ Rachel Kovner  
                                              RACHEL P. KOVNER  
                                              United States District Judge

Dated:  September 3, 2024  
           Brooklyn, New York